

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
      **JUDGE**

# LETTER OPINION

April 27, 2011

James Langton
Langton & Atler
P.O. Box 1798
1600 St. Georges Avenue
Rahway, New Jersey 07065
*(Attorneys for Plaintiff)*

Robert R. Schriver
Special Assistant United States Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278
*(Attorney for Commissioner of Social Security)*

> RE: *Ruby Stephens o/b/o Jonathan Walker v. Commissioner of Social Security*
>     Civil Action No. 10-3102 (WJM)

Dear Counsel:

Plaintiff Ruby Stephens ("Stephens") brings this action on behalf of her son Jonathan Walker ("Walker") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under Title II and title XVI of the Social Security Act. There was no oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

## I.   Standard of Review and Analysis at the Administrative Level

The district court has plenary review of the Administrative Law Judge's ("ALJ") application of the law. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). When substantial evidence exists to support the ALJ's factual findings,

this Court must abide by the ALJ's determinations. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing 42 U.S. § 405(g)).

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires at Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits and the analysis ends; if not, the ALJ moves on to Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At Step Four, the ALJ decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec. Admin.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## II. Factual and Procedural Background

Ms. Stephens brought this action to challenge the Commissioner's denial of her application for Supplemental Security Income benefits on behalf of her son, Jonathan Walker, who was then under eighteen years old. She alleged his disability since January 1, 2000. The application was denied at the initial level on April 11, 2007 and again after reconsideration on July 2, 2007. On December 3, 2008, a hearing was held before ALJ Cameron Elliot, and on February 3, 2009, the ALJ denied Walker's claims for benefits, finding his nonexertional limits had little or no effect on his ability to work. The Appeals Council denied Stephen's request for review on April 16, 2010.

Walker was born on January 30, 1990 and attended Hoboken High School from where he graduated on June 28, 2008. Stephens claims that Walker has been disabled since January 1, 2000 on the basis of "learning disabilities and emotional problems." *See* (Tr. 124) Walker suffers from a history of Attention Deficit and Hyperactivity Disorder and oppositional defiant behavior disorder. School records from late 2006 reported that Walker was not very attentive, did not come to school regularly, and did not come in after school to do extra work. (Tr. 12.) Walker was also noted to exhibit little effort and have problems with authority. *Id*. On February 14, 2006 the Hoboken Public School District's Child Study Team held a meeting to formulate an Individual Education Program ("IEP") to last through February 2007. (Tr. 199-233.) Based on this meeting it was determined

that Walker was eligible for special education, however, he decided he wished to remain in general education with some "behavioral supports." (Tr. 214.) Walker would have unrestricted participation in extracurricular and nonacademic activities. (Tr. 213.)

Several teachers and learning-disabilities consultants as well as one consultant physician, Dr. Miskin, evaluated Walker. Teacher evaluations of Walker from October 2006 varied in their opinions. Several teachers described him as "not very attentive," while other teachers, particularly his Algebra II teacher, said that he was "fully satisfactory." *See* (Tr. 187-89.) Walker scored a "standard score" of 101, or the 53rd percentile, on the Woodcock-McGrew-Werder Mini-Battery of Achievement Test, which was administered by a learning disabilities teacher-consultant. (Tr. 196.) Walker scored in the 18th percentile in the "factual knowledge" portion of the test, which measures science, social studies, and humanities aptitudes. *Id*.

A psychological evaluation revealed an impression of a "well adjusted adolescent" despite "problems with authority" and "feeling victimized." (Tr. 191.) Walker scored an 85 on a full-scale IQ test, which is also known as "low average" range. (Tr. 192.) Patricia Drumgoole, a social worker, completed a teacher questionnaire on March 1, 2007 and stated that she had known Walker for three years, and met with him as needed as his case manager. Ms. Drumgoole evaluated Walker's limitations based on the six-functional limitations used by the Commissioner in evaluating childhood disability, and found generally that Walker only had slight problems in two areas and no problems in the other four. (Tr. 131-134.) Ms. Drumgoole indicated further that Walker had an educational disability in the category of "Emotional Disturbance/Behavior Disorder." (Tr. 140-141.)

Dr. Miskin, a consultative psychiatric examiner, examined Walker on March 2, 2007. Dr. Miskin noted that although Walker appeared "alert and fully oriented," he was "sullen and irritable" during the valuation. Dr. Miskin diagnosed Walker with chronic, severe attention deficit disorder and hyperactivity and oppositional defiant disorder. (Tr. 161.) Dr. Miskin did not test cognitive functions, judgment or insight because of Walker's poor attitude. (Tr. 160.)

On April 5, 2007, Dr. Farrell, a psychologist, evaluated Walker's scholastic and medical records and completed the childhood-disability form stating that Walker had an impairment that was severe but did not meet, medically equal or functionally equal, any impairments listed in Appendix 1 of 20 C.F.R. Part 404, subpart P. (Tr. 163-168.) Dr. Farrell also opined that there "was nothing to support a diagnosis of attention-deficit hyperactivity disorder as diagnosed by Dr. Miskin. (Tr. 168.) The IEP for Walker for the 2007-2008 school year classified him as being "emotionally disturbed." (Tr. 224.)

The ALJ considered all of these evaluations in making his decision, although he discounted portions of the evaluation by Dr. Miskin where that evaluation deviated from other medical evidence and where the doctor's observations were based primarily on testimony from the mother instead of evaluation and observation of Walker himself. (Tr. 14.) The ALJ also gave more weight to the evaluations by Walker's teachers and case-worker as they saw him more consistently and evaluated his progress through high school. *Id*. The AJL also relied on Walker's testimony given at trial. Walker testified that he had been arrested twice, once charged with robbery and once charged with drug

3

possession. (Tr. 14.) Walker further testified that he applied for jobs at various retail stores, although none had gotten back to him so far about employment. *Id.*

The ALJ found that Walker had no impairments or combination of impairments that met, medically or functionally equaled any listing, and therefore was not disabled prior to attaining the age of 18. (Tr. 18.) The ALJ further found that despite non-exertional limitations, those limitations had little or no effect on the occupational base of unskilled work available at all exertional levels. (Tr. 21.)

## III.   Legal Analysis

### A.   The AJL gave appropriate weight to testimony by Dr. Miskin as he cannot be classified as a treating physician.

Stephens first argues that the ALJ's analysis is not supported by sufficient evidence because the AJL failed to give sufficient weight to the opinion of Dr. Miskin. Stephens argues that Dr. Miskin was Walker's "treating physician" and as such, his opinion cannot be rejected by the ALJ unless there is "adequate medical contradiction." *Allen v. Bowen*, 881 F.2d 37, 41, 42 (3d. Cir. 1989). Stephens argues that the ALJ is bound by the opinion of Dr. Miskin unless there is medical evidence that refutes the "treating physician's" opinion. *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

Dr. Miskin, however, was not Walker's treating physician. Dr. Miskin was a one-time consultative examiner, and as Stephens herself argues, the "opinion of a treating physician is entitled to more weight than that of a one time consultative examiner." *Mason v. Shalala*, 994 F.2d 1059, 1067 (3d. Cir. 1993). The record shows that Dr. Miskin only saw Walker one time, and through no fault of his own, did not even complete the evaluation due to Walker's poor attitude. (Tr. 160.)  In the case law Stephens brings forth, all of the doctors saw the patients on a repeated basis, prescribed medications and even performed surgery, in the case of *Allen v. Bowen*, on the patient. *See Allen*, 881 F.2d at 38-40 (various surgeries had been performed upon patient by same physician); *Frankenfield v. Bowen*, 861 F.2d 405 (3d Cir. 1988) (noting patient was seen on numerous occasions over five year period by a cardiologist, internist and psychiatrist, all of whom gave reports on the extent of his disability); *Kent v. Schwiker*, 710 F.2d 110 (3d Cir. 1983) (physician saw patient 1978-1982); *Smith v. Sullivan*, 720 F. Supp. 62 (E.D. Pa. 1989) (noting that a physician who had only seen a patient one time should be given less weight); *Rossi v. Califano*, 602 F. 2d 55 (3d. Cir. 1979) (patient was diagnosed with cancer and physician performed surgery on patient and treated her through recovery). As *Podedworny v. Harris* notes, the reason behind the treating physician's report being accorded more weight is that their opinion "reflects expert judgment based upon *continuing observation* of the patient's condition over a prolonged period of time." 745 F.2d 210, 217-18 (3d Cir. 1984) (emphasis added). A one-time examiner cannot be likened to a treating physician simply because Stephens desires Dr. Miskin's evaluation to carry more weight than the other evaluations.

Pursuant to the regulations, the ALJ reviewed all the evaluations from every

4

examiner meticulously and drew his conclusions from that evidence. *See* 20 C.F.R. § 416.924a(a) (stating that in childhood disability cases, "we consider all relevant information."). The ALJ therefore concluded that the evaluations by his school case-worker, Mrs. Drumgoole (exhibits 4E) and his school records (6F, 7F) were the most reliable and weightiest evidence of Walker's condition. (Tr. 14.) The ALJ agreed with Mrs. Drumgoole's findings that Walker suffered from only a "slight" or "obvious" impairment in any functional area. (Tr. 15.) The AJL noted that the opinion of Mrs. Drumgoole was "fully credited" and based solely on repeated one-on-one interactions with Walker; whereas Dr. Miskin's report was incomplete, and seemed to be based primarily on Stephen's testimony about Walker's symptoms. (Tr. 14.)

The AJL explained that he discredited Dr. Miskin's report because it was "not consistent with the observations of [Walker's] teachers and caseworker, and is not based on a thorough understanding of Walker's behavior formed after extensive daily interaction and observation." (Tr. 15.)

### B. The ALJ's decision not to use a vocational expert in determining whether sufficient jobs exist in the national economy was not erroneous as it relied on a specific "crystal clear" social security regulation.

Stephens argues that the ALJ was required to rely on the testimony of a vocational expert in determining whether Walker's RFC included non-exertional limitations. (Pl. Br. at 14-28). Stephens relies primarily on *Sykes v. Apfel,* 228 F.3d 259, 269 (3d. Cir. 2000) to support this assertion. This assertion, however, is incorrect. The AJL may "rely on an SSR as a replacement for a vocational expert if it is 'crystal-clear that the SSR is probative as to the ways in which the non-exertional limitations impact the ability to work, and thus, the occupational base.'" *Allen v. Barnhart*, 417 F.3d 296, 407 (3d Cir. 2005).

In the case at bar, the ALJ referred Stephens to SSR 85-15 and section 204.00 in the Medical-Vocational Guidelines which "adequately and publicly establishes the degree of diminution in the occupational base," and are "crystal clear." *Allen,* 417 F.3d at 407. Section 204.00 states, "[i]ndividuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work—either of which would have already provided a basis for a decision of 'not disabled.'" The ALJ determined, based primarily on the record and Walker's own testimony, that Walker is a "strong, able-bodied individual who is capable of doing 'heavy work.'" (Tr. 20.)

Additionally, Walker was a member of the football team and performed chores and repairs around the house for his mother. (Tr. 20.) Based on this record, the AJL was able to conclude that Walker could do heavy work easily. Therefore, the public regulations of section 204.00 were "crystal clear" as to the way that the limitations effect Walker's ability to work—here, they do not as Walker is capable of doing heavy work. Because there are no non-exertional limitations caused by Walker's mental health impairments that eroded the occupational based of unskilled work, reliance on the grids

was appropriate. *Brigaliadore v. Comm'r of Social Security*, Civ. No. 08-5830, 2010 WL 1644641, at *8 (D.N.J. Apr. 23, 2010). Thus, contrary to Stephen's argument, nothing required the ALJ to take testimony about the state of jobs in the economy and Walker's ability to attain them.

## IV. Conclusion and Recommendation

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

                                              /s/ William J. Martini
                                       **WILLIAM J. MARTINI, U.S.D.J.**